UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| BRUCE CARTER | CIVIL ACTION NO. 3:04-CV-1324 |
|---|---|
| -vs- | JUDGE DRELL |
| LOUISVILLE LADDER GROUP, LLC<br>DAVIDSON LADDERS NEVADA, INC.<br>KEMPER CASUALTY INSURANCE CO. | MAGISTRATE JUDGE KIRK |

R U L I N G

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 50). Defendants, Louisville Ladder Group, LLC, Davidson Ladders Nevada, Inc. and/or Kemper Casualty Insurance Co. (hereinafter collectively referred to as "Defendants"), claim that Plaintiff, Bruce Carter, has failed to produce any evidence supporting each of his claims. Plaintiff opposes the motion. (Doc. 54). Following a thorough review of all pleadings and applicable law, Defendants' Motion for Summary Judgment will be GRANTED. A separate judgment will issue accordingly.

Factual Background

On May 28, 2003, Mr. Carter was injured when he fell while climbing down from the roof of his house using a Davidson Model 405-20 Type II 20-foot

aluminum extension ladder.[1]  On the day of the accident, Mr. Carter set-up and positioned the ladder at an angle of approximately fifty-nine degrees from his house.[2]  He positioned the feet of the ladder on a sloped, grassy area of his yard.  He then used the ladder to climb onto the roof of his house.  Mr. Carter was accompanied by a friend who ascended the ladder twice and descended once before Mr. Carter's fall.  Prior to the accident, neither man noticed any instability or difficulty with the ladder.

The accident occurred when Mr. Carter attempted to climb back down from the roof for the first time.  He grabbed the left handrail and placed his right foot on a rung of the ladder.  According to Plaintiff, once he placed his hand and foot on the ladder, "the ladder bowed [toward the ground] and shot out from under" him. (Doc. 54). Defendants, however, claim that the accident occurred when "the feet of the ladder slid backwards" as a result of Plaintiff's misuse of the ladder. (Doc. 50).  Despite their disagreement about how the accident occurred, both parties agree that Mr. Carter fell from the ladder, landed on top of it, and sustained "serious injuries," for which he seeks compensation.  His injuries

---

[1] The ladder was originally manufactured by Cuprum S.A. de C.V. in October 1993.  Cuprum's ladder business became part of Louisville Ladder Group LLC in 1998.  At that time, Louisville Ladder Group LLC manufactured the Davidson 405-20 ladder.  On December 31, 2004, Louisville Ladder Group, LLC was converted to Louisville Ladder Inc.

[2] Throughout the ruling, various measurements describing to the ladder's set-up are discussed.  At all times, the measurements are of the inside angle, created by the ladder's intersection with the ground, not the top of the ladder and the house.

included damage to his back, left knee, and head. (Doc. 65, Exh. C, p. 19). The ladder also sustained damage to the left and right hand rails. (Doc. 50).

Prior to the accident, Plaintiff had owned the ladder for approximately ten years and had used it several times during those years without encountering any problems. (Doc. 50). Affixed to the ladder were several safety warning labels and place cards, including a pictorial diagram, that provided instructions on the proper set-up and use of the ladder. (Doc. 50). Mr. Carter admits he does not recall ever having read the warnings and probably never did. (Doc. 50, Exh. B., p. 29).

Plaintiff brought suit against Defendants, alleging the ladder was improperly manufactured because the thickness of the left rail web measured 0.072 inches rather than the prescribed 0.075 to 0.085 inches for the ladder model;[3] the ladder was defectively designed because it did not have a spiked foot that would more securely anchor the ladder into the ground; Defendants provided inadequate warnings regarding the dangers associated with the ladder; and Defendants were generally negligent.

Defendants deny Mr. Carter's claims. They assert the ladder was properly designed and manufactured; the warnings were adequate; and they were not negligent. Defendants blame Mr. Carter's failure to set up and use the ladder

---

[3] In 1996, after Mr. Carter's ladder was manufactured but before the accident occurred, Defendant Louisville Ladder redesigned the rail dimensions and actually reduced the web thickness specifications to 0.060–0.070 inches. The redesigned model passes the ANSI standard. (Doc. 50).

properly for the accident and make the following arguments in response to Mr. Carter's allegations: First, the instructions accompanying the ladder specified that the ladder must be set-up at a 75.5 degree angle, rather than the approximate 59 degree angle at which Mr. Carter set it up. (Doc. 50). Second, the warning accompanying the ladder provided that the user should place the ladder on a firm, level surface. Defendants claim that the sloped, grassy yard on which Mr. Carter placed the ladder did not satisfy this requirement for proper set-up. (Doc. 50). Instead of placing the ladder on the grassy yard, Defendants posit that Mr. Carter should have placed the ladder on the sidewalk in front of his house, which was level and not as slippery. Mr. Carter argues that the sidewalk, composed of a mixture of concrete and gravel, was a more slippery surface than the grass on which it was placed. Third, the ladder was approved for use by a person weighing up to 225 pounds and Mr. Carter weighed approximately 250 at the time of the accident.[4] (Doc. 50). Finally, they say Mr. Carter improperly positioned the ladder so that the "base section" was on top of the "fly section," which extended approximately four rungs above the roof line. (Doc. 52, Exh. A, p. 7 and Exh. B ). According to Defendants' expert, Erick Knox, Ph.D., by setting up the ladder backward, with the base section closer to the user than the fly section, the "D-shaped rungs do not create a horizontal standing surface, and this

---

[4] Although Defendants do not claim that Mr. Carter's weight caused the accident, they claim that his use of the ladder, despite his weight, is an additional indication that he selected and used the ladder improperly. (Doc. 50).

4

is more noticeable at the steps where the base and fly overlap." (Doc. 52, Exh. G, p.5). Additionally, photographs provided by Defendants show that when the fly section is on top of the base section, the feet of the ladder do not properly face and touch the ground. Rather, the feet face outward and toward the person who will be climbing onto the ladder. (Doc. 52, Exh. H). Mr. Carter does not deny he set up the ladder at an improper angle, weighed more than the recommended amount, or placed the base section on top of the fly section. He simply denies his negligent actions in relation to the ladder caused the ladder to fail.

Defendants further claim their design was not defective because it was subject to a full battery of tests performed by the American National Standards Institute (hereinafter "ANSI") on numerous occasions. (Doc. 50). The ladder model owned by Mr. Carter consistently met or exceeded all of the ANSI test requirements each time the tests were performed. (Doc. 50). Finally, Defendants say the ladder model also complied with the requirements imposed by Underwriters Laboratory and Occupational Safety and Health Administration regulations for ladders of the same type. (Doc. 50).

Law and Analysis

I.  Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure mandates that a summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file . . . together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the movant's position will not be sufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530 (5th Cir. 1999).

If the movant produces evidence tending to show there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. Eason v. Thaler, 73 F.3d 1322 (5th Cir. 1996)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986)). In the analysis, all inferences are drawn in the light most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157 (5th Cir. 1959). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. Brock v. Chevron U.S.A., Inc., 976 F.2d 969 (5th Cir. 1992).

II.     Requirements of the Louisiana Products Liability Act

Mr. Carter brings his claims under the Louisiana Products Liability Act (LPLA) and principles of general negligence. The LPLA imposes liability on product manufacturers for damages "proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant." La. Rev. Stat. § 9:2800.54. The Act requires a plaintiff asserting a products liability action against a manufacturer to satisfy a two-tiered burden: the plaintiff must show that (1) his damages arose from a reasonably anticipated use of the product, and (2) his damages were caused by a characteristic of the product that renders it unreasonably dangerous. Kampen v. American Isuzu Motors, Inc. 157 F.3d 306, 309 (5th Cir. 1998). "If a plaintiff's damages did not arise from a reasonably anticipated use of the product, then the "unreasonably dangerous" question need not be reached." Id. Because the issue of reasonably anticipated use is a threshold matter for any claim brought under LPLA, and Defendants challenge Plaintiff's use of the ladder as not reasonably anticipated, the Court will address that issue first.

A.     Reasonably Anticipated Use

The parties disagree about whether the manner in which Mr. Carter used the ladder was reasonably anticipated according to the terms of the statute. Plaintiff would like the Court to adopt a very narrow interpretation of the idea of

7

reasonably anticipated use. In his opposition to Defendants' Motion for Summary Judgment, Mr. Carter asserts the ladder was being used in a reasonably anticipated manner because it was being used for the purpose of ascending and descending from Plaintiff's roof. (Doc. 54-1). Plaintiff maintains that "[t]his is not only a reasonably anticipated use of the ladder, it is the primary use of a ladder." (Doc. 54-1). While the Court agrees that a ladder's primary purpose is to facilitate ascent and descent from one place to another, the Court declines to read the statute's use of the phrase "reasonably anticipated use" so narrowly.

The Fifth Circuit discussed the breadth of the phrase "reasonably anticipated use," as a term of art, in Kampen v. American Isuzu Motors, Inc., 157 F.3d 306 (5th Cir. 1998). The Court noted it has consistently defined "use" to include not only the ordinary, intended use of a product, but also some of the plaintiff's negligent conduct. Kampen, 157 F.3d at 312, citing Hunter v. Knoll Rig & Equipment Mfg. Co., LTD, 70 F.3d 803 (5th Cir. 1995)(finding the consumer did not use a drilling rig racking board in a reasonably anticipated manner because the consumer had been racking the pipes in an "obviously dangerous" manner, contrary to industry practice). In Kampen, the plaintiff sued for damages resulting from an accident which occurred when an Isuzu fell on top of him. The plaintiff had employed the car's jack, which the manufacturer intended to be used to change tires, to elevate the car so that he could slide underneath the car and examine the underside of the car. Isuzu had specifically included a warning that

8

the jack was to be used only for changing tires and that a person should never get beneath the car when using the jack. Kampen, 157 F.3d at 309. Despite the plaintiff's argument that he had used the jack for its reasonably anticipated use, to elevate the car, the Court did not define the jack's use as narrowly as simply raising the car. Rather, the Court wrote: "Kampen began using the jack when he elevated the car with it. When Kampen finished jacking the car up, however, his use of the jack did not conclude. Thereafter, Kampen used the jack *by relying on the jack to hold the car in its elevated position.* When Kampen placed himself beneath the car, he was still using the jack: he was *relying on the jack to hold the car above his body.*" Kampen, 157 F.3d at 311 (emphasis original).

It is clear to the Court that the Fifth Circuit broadly applies the term "use" so that "use" is not limited to the product's official, intended use. Therefore, although Mr. Carter would like the Court only to analyze whether using the ladder for ascent and descent qualified as a reasonably anticipated use, the Court must also consider Mr. Carter's method of setting up the ladder, all applicable warnings, and Mr. Carter's weight on the ladder to determine whether Mr. Carter made reasonably anticipated use of the ladder.

Since the Court has concluded that Mr. Carter's use of the ladder at the time the injury occurred falls within the statutory language of La. Rev. Stat. § 9:2800.54 and that Mr. Carter's use includes negligent acts performed in connection with using the ladder for ascent and descent, we now examine

9

whether the use was reasonably anticipated. In particular, we look at: "what impact an express warning should have on whether the use of the product is reasonably anticipated" (Kampen, 157 F.3d at 313) and whether other users were performing the same or similar negligent acts that Mr. Carter engaged in at the time of the accident as to give Defendants notice of these uses. Id.. The latter inquiry is analyzed more fully *infra*.

The statute defines a "reasonably anticipated use" as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." La. Rev. Stat. § 9:2800.53(d)(7). The standard for reasonably anticipated use is objective and is made from the standpoint of the manufacturer at the time that the product was produced.[5] Whether a use was foreseeable to the manufacturer is not the question before the Court. Lockart v. Kobe Steel Ltd. Const. Mach. Div., 989 F.2d 864, 867 (5th Cir. 1993).[6]

Defendants provided the Court with an affidavit that they did not reasonably anticipate that a user would employ their product in the manner

---

[5] Defendants properly cite Delphen v. Department of Transportation & Development, 657 So.2d 328, 334 (La. App. 4th Cir. 1995) for the statement: "a product is not unreasonably dangerous or defectively designed where the evidence shows that the product can be safely used if the instructions in the operations manual are followed." This point of law does not bear on the questions before the Court however because Mr. Carter claims that even if the instructions had been properly followed, the ladder was improperly constructed and therefor not reasonably safe.

[6] Prior to the passage of the LPLA, a manufacturer was liable for all damages arising from "normal use" of a product, which included all reasonably foreseeable uses and misuses. This is no longer the standard. See Blanchard v. Midland Risk Ins., 2001-1251(La. App. 3 Cir. 2002); 817 So. 2d 458 and cases cited therein.

Plaintiff did. Defendants' expert, Lori J. Bremick, averred that "Mr. Carter's use of the subject ladder set-up at a 58.8 degree angle of inclination with the feet positioned on an unlevel [sic] surface was not one reasonably anticipated by Louisville Ladder when the subject ladder was manufactured in 1993." (Doc. 50, Exh. A, page 2). Mr. Carter offers no evidence to refute this statement and show that there was such an expectation. Rather, his expert, Charles Wayne Powell, testified: "I don't know what Louisville Ladder considers nor was I asked to–to develop what they could have known or considered concerning operational angles." (Doc. 50, Exh. D, p. 77). Ms. Bremick's uncontested affidavit facially shows that Defendants did not anticipate a use similar to Mr. Carter's at the time the ladder was manufactured.

One statement by Defendants' expert is not sufficient to convince the Court that Mr. Carter did not put the ladder to a reasonably anticipated use, however. The LPLA also provides that the instructions and warnings accompanying a product may indicate the uses a manufacturer reasonably anticipated. As observed above, under the LPLA, "when a plaintiff misuses a product, in direct contravention of a warning, his use will not be reasonably anticipated unless the plaintiff can show that the manufacturer should have known that the product users were using the [product] in contravention of certain warnings." Kampen, 157 F.3d at 317 (quoting Lockart, 989 F.2d at 868)(internal quotation marks omitted). If the manufacturer provides the consumer with a

11

clear, direct, written warning that includes an easy to understand pictogram and that warning expresses that using the product in a specified way is dangerous, "*it is expected that an ordinary consumer would not use the product in contravention of the express warning.*" Kampen, 157 F.3d at 313 (emphasis original)(quoting Lockart, 989 F.2d at 867). An adequate warning is not, however, always dispositive of reasonably anticipated use. Kampen, 157 F.3d at 314. Rather, only a warning "against a product *misuse* is relevant to assessing what uses of its product a manufacturer reasonably anticipates." Kampen, 157 F.3d at 314.

Defendants have provided the Court with evidence the ladder included several instructions explaining how it was to be properly used and warnings against misuse. In its Motion for Summary Judgment, Defendants provide the Court with three photographs (Doc. 50, Exhibit G), each showing a different warning label. All labels were attached directly to the ladder itself. Descriptions of each label follow:

(1) The first warning, printed on a bright yellow sticker, depicts a man falling off of a ladder. Below the picture, the warning states: "FAILURE TO READ AND FOLLOW INSTRUCTIONS ON THIS LADDER MAY RESULT IN INJURIES OR DEATH."

(2) The second warning, also printed on a yellow sticker, is intended to demonstrate how to set up the ladder properly. The label includes a

pictogram showing a man standing with the ladder slightly in front of his toes; the ladder's rungs at an arm's length distance; and the fly section above the base section. The warning provides: "SET UP LADDER PROPERLY TO REDUCE SLIP AND OVERLOAD HAZARDS. FOLLOW THESE INSTRUCTIONS . . . (1) PLACE TOES AGAINST BOTTOM OF LADDER SIDERAILS. (2) STAND ERECT. (3) EXTEND ARMS STRAIGHT OUT. (4) PALMS OF HANDS SHOULD TOUCH TOP OF RUNG AT SHOULDER LEVEL."

(3) The third label includes several warnings, written in a smaller type than were the warnings previously discussed. Under the heading "PROPER SET-UP," the directions instruct the user to "[s]et single or extension ladder at proper (75-1/2 degree) angle by placing ladder base a distance equal to 1/4 total working length of ladder away from base of vertical support . . . Set ladder on firm ground. Do not lean sideways. Do not use on ice or snow or slippery surface without non-skid devices or securing feet . . . Place on firm level surface and a secure footing. Do not use on slippery surfaces."

Plaintiff acted in direct contravention of each of these warnings. First, he did not read and follow the instructions. Then, despite the pictogram and specific instructions detailing how the ladder was to be set up so that it would rest at a 75.5 degree angle, Mr. Carter did not follow the instructions and instead placed

the ladder at an approximate 59 degree angle, one much more shallow than that provided for in the instructions.  While the Court concedes that a user might not be able to place this ladder at exactly a 75.5 degree angle without tremendous trouble (and recognizes that doing so may be impossible in some instances), Mr. Carter's set up did not even approach the proper arrangement.  Similarly, despite the express warnings that the ladder must be placed on a firm, level surface, Mr. Carter placed the ladder in a sloping patch of grass, which may not have been firm.  As predicted by the first warning, failure to read and follow instructions resulted in harm.[7]

The final inquiry in regard to reasonably anticipated use that the Court will engage in is whether the Defendants knew or should have known that the product was being used in contravention of the warnings.  As noted above, if a manufacturer knows or should know that users are disregarding the warnings when using the product, that prohibited use is considered to be a reasonably anticipated use. Kampen, 157 F.3d at 317. Mr. Carter has not presented the Court with any evidence indicating that other users engaged in the type of negligent acts that Mr. Carter did, nor that, if such negligent acts occurred, Defendants knew or should have known of them.  To the question "[d]o you know whether or not when Louisville Ladder manufactured the subject ladder in 1993, it had any

---

[7] We also are loath to understand why, when the angular warnings were so specific, Mr. Carter did not ask his friend to hold and brace the ladder as he ascended and descended.  This, in addition to the warnings, is a known, common precaution taken by ladders users.

reports of people using this ladder at a fifty-eight degree angle?" Mr. Powell, Plaintiff's expert, responded "I don't know." (Doc. 50, Exh. D, p. 78). Without any evidence the Court is unable to conclude that Defendants should have expected Mr. Carter or other users to use the product in contravention of the warnings.

      Collectively, the evidence before us shows there is no genuine issue of material fact as to whether Mr. Carter put the ladder to a reasonably anticipated use. First, Defendants are not expected to reasonably anticipate that a user will set-up the ladder backward, that is with the base section above the fly section. A simple visual examination of the ladder once it was set up would have revealed to any user that it was backward because placing the ladder backward, as Mr. Carter did, caused the rungs to have unequal horizontal standing surfaces and caused the rubber ground contacts to face the climber instead of the ground. Second, Defendants provided an affidavit that they did not reasonably anticipate users to use the ladder as Mr. Carter did. Third, Defendants have shown that Mr. Carter's use of the ladder violated the instructions and warnings provided to him. Finally, Plaintiff failed to provide the Court with any evidence that Defendants should have reasonably anticipated that he would use the ladder in the manner that he did. On the basis of the forgoing factors, the Court finds there is no genuine issue of material fact whether Mr. Carter put the ladder to a reasonably anticipated use.

The Court notes in passing that Mr. Carter claims (1) the ladder was unreasonably dangerous in its construction or composition; (2) the ladder was unreasonably dangerous in design; and (3) the ladder was not equipped with adequate warnings. However, since Plaintiff has failed to demonstrate that he put the ladder to a reasonably anticipated use, his claims must fail on a threshold level. To support any of the three claims listed above, a plaintiff first must demonstrate he put the product to a use reasonably anticipated by the manufacturer. Mr. Carter has failed to do this.

Finally, Mr. Carter's claim for negligence against Defendants must fail as well. The LPLA bars all causes of action for general negligence brought against product manufacturers. La. Rev. Stat. § 9:2800.52. See also Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254 (5th Cir. 2002), Jefferson v. Lead Industries Ass'n, Inc., 930 F.Supp. 241 (E.D. La. 1996). Because La. Rev. Stat. § 9:2800.52 subsumes a general negligence cause of action, Mr. Carter's negligence claim must be dismissed with prejudice.

Defendants have presented the Court with sufficient evidence to meet their burden that there is no genuine issue of material fact about whether Mr. Carter put the ladder to a reasonably anticipated use. Since Plaintiff has failed to meet its burden in raising a genuine issue of material fact about whether his use of the ladder was reasonably anticipated, Defendants are entitled to judgment as a

matter of law. Therefore, Defendants' Motion for Summary Judgment will be GRANTED and Plaintiff's claims will be dismissed with prejudice.

SIGNED on this 17th day of November, 2005, at Alexandria, Louisiana.

Dee D. Drell
United States District Judge